UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-cr-125 (MJD/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| Kyle Wayne Martin, Sr., | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Evidence Obtained by Search and Seizure. [Docket No. 14]. The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court held a hearing on June 24, 2014, regarding the Defendant's motions for discovery[1] and suppression.  For reasons outlined below, the Court recommends that Defendant's Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 14], be **DENIED as moot**.

I.      BACKGROUND

Kyle Wayne Martin, Sr. ("Defendant"), is charged in the present case with a single count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153, 2241(a), and 2246(2)(A). (Indictment [Docket No. 1]).  Defendant was indicted on April 22, 2014.  On May 14, 2014, Defendant made the present Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 14] (hereinafter, "Motion to Suppress Evidence"), and simultaneously filed a Memorandum in Support, [Docket No. 15].  The Government made its Response to this Motion

---

[1] Defendant's discovery motions were the subject of a separate Order.  [Docket No. 28].

1

and Defendant's other Motions on May 28, 2014.  [Docket No. 24].  At the conclusion of the June 24, 2014, motions hearing, the parties requested, and this Court permitted, additional time to brief the present Motion to Suppress Evidence.  (See Minute Entry [Docket No. 27]).  On June 30, 2014, Defendant filed his Supplemental Memorandum.  [Docket No. 28] (hereinafter, "Defendant's Supplemental Memorandum").  Subsequently, the Government submitted its Supplemental Response, ([Docket No. 33] (hereinafter, "Government's Supplemental Response")), on July 3, 2014, at which time the Motion was fully briefed.

Trial is scheduled before the Hon. Michael J. Davis for September 3, 2014.  (Am. Date Certain Trial Notice [Docket No. 32]).

## II.   MOTION TO SUPPRESS EVIDENCE [Docket No. 14]

Defendant asks this Court to suppress evidence that was seized without a warrant from a bedroom of a residence on the Red Lake Indian Reservation (the "Reservation") on March 24, 2014, specifically: "one black blanket, one pillow with a black pillow case, one white sheet that was under a blue sheet, one broken/used condom, and one condom wrapper, as well as photographs of these items" (hereinafter, the "disputed evidence").  (Def.'s Supplemental Mem. [Docket No. 29], at 1).

### A. Facts[2]

In the early morning hours of March 24, 2014, Reservation police dispatch advised officers of a physical altercation at the Edna Johnson residence in the Reservation's Ponemah area.  Officer Dominic Hamre ("Officer Hamre") was the first to respond to the residence, where

---

[2] The Facts for this Part are drawn from the testimony of the following Red Lake Police Department officers at the June 24, 2014, motions and evidentiary hearing: Officer Dominic Hamre ("Officer Hamre"), Sergeant Harlan Johnson ("Sgt. Johnson"), and Officer Christopher Sumner ("Officer Sumner").

2

a woman invited him inside.  Once inside, Officer Hamre was met by three women and a man.[3] Officer Hamre observed two pools of blood in the house, and also observed that the woman who had invited him inside had blood running down her face, and that the man had a bloody nose. Officer Hamre was told that Defendant was intoxicated and had been fighting, and that Defendant was in a bedroom down the hall, the last door on the left.  Officer Hamre testified that he did not know whether or not Defendant lived at the Edna Johnson residence, and that he was simply told in which bedroom he could find Defendant.

Officer Hamre proceeded to that bedroom, the last on the left, where he found the door open and the lights off.  When he turned the light on, he saw Defendant under the covers. Officer Hamre awakened Defendant, identified him, and subsequently determined that there was an outstanding tribal warrant for his arrest.  At that point, Officer Hamre handcuffed Defendant, helped him dress, and escorted him outside the house to Officer Hamre's squad car. At about this time, a second officer, Officer Christopher Sumner ("Officer Sumner") arrived and was present as Defendant was being escorted out of the house.  Officer Hamre then transported Defendant to the Red Lake Detention Center, while Officer Sumner went to the nearby ambulance station in an attempt to locate another potential victim.

Upon arriving at the ambulance station, Officer Sumner found the vehicle of the potential victim he was looking for, but did not find the potential victim, herself.  Shortly thereafter, Officer Sumner was contacted by Sergeant Harlan Johnson ("Sgt. Johnson"),[4] who advised that he was transporting the potential victim to Red Lake Hospital.  At this time, it also became known that a sexual assault might have occurred at the Edna Johnson residence, although the

---

[3] Officer Sumner later identified these people as Edna Johnson (the home's primary resident), Cassie Johnson, Melanie Johnson, and Kevin Johnson.  (All spellings phonetic.)

[4] The record does not reflect whether Sgt. Johnson is related to Edna Johnson or to any of the other persons who were present at the Edna Johnson residence in the early morning hours of March 24, 2014.

3

source of this information is not clear in the record; Sgt. Johnson testified that he was advised of the possible sexual assault by Officer Sumner, while Officer Sumner testified that he was advised of the possible sexual assault by Sgt. Johnson.  In either case, Sgt. Johnson at that time instructed Officer Sumner to return to the Edna Johnson residence to secure the scene and wait for further instructions, which Officer Sumner understood to mean simply that he was to make sure that any evidence at the scene was not disturbed.

When Officer Sumner arrived at the house the second time, he advised those present, including Edna Johnson, whose residence it was, that he was there to secure the scene, and he was again invited inside.  Initially, Officer Sumner merely stood outside of the door to the same bedroom where Defendant had been previously located.  However, a short time later, he was contacted again by Sgt. Johnson, and the two discussed certain items that were visible to Officer Sumner through the doorway in the bedroom, including the blanket, pillow, and sheets on the bed, and a condom and condom wrapper on the floor.  Officer Sumner testified that Sgt. Johnson at that time instructed him to seize the bedding, the condom, and the condom wrapper; Officer Sumner did seize those items, although he admitted that he did not have a warrant.

### B. Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV. "It is now axiomatic that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions.'"  United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). While "[t]he government bears the burden of establishing that an exception to the warrant requirement

applies," United States v. Williams, 616 F.3d 760, 765 (8th Cir. 2010), "'[t]he defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area or item searched.'" United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994) (quoting United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994)).

### C. Discussion

In the present case, Defendant's Motion to Suppress Evidence, [Docket No. 14], has been rendered moot by the Government's express representation in its written briefing to this Court that it will not use the disputed evidence in its case-in-chief: "The United States agrees not to use in its case-in-chief the evidence seized by Officer Sumner of the Red Lake Police Department on March 24, 2014. This evidence was: bedding, a used condom and a condom wrapper." (Gov't's Supplemental Resp. [Docket No. 33], at 2).

Consequently, this Court recommends that Defendant's Motion to Suppress Evidence, [Docket No. 14], be **DENIED as moot**.[5]

---

[5] By representing merely that it will not use the disputed evidence "in its case in chief," the Government has not waived its right to use the disputed evidence to impeach Defendant if Defendant should choose to testify in his own defense.

With regard to any use of the disputed evidence by the Government for purposes of impeachment, this Court need not determine whether the disputed evidence was seized in violation of Plaintiff's Fourth Amendment rights, because the use of such evidence for impeachment "comports with the Supreme Court's rule that . . . illegally seized evidence, even if otherwise inadmissible, may be used to impeach a testifying defendant." United States v. Rowley, 975 F.2d 1357, 1361 (8th Cir. 1992) (citing, *inter alia*, James v. Illinois, 493 U.S. 307 (1990); United States v. Havens, 446 U.S. 620, 626-27 (1980)).

As the U.S. Supreme Court explained in James:

> One exception to the [exclusionary] rule permits prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the credibility of the defendant's own testimony. This Court first recognized this exception in Walder v. United States, 347 U.S. 62 (1954), permitting the prosecutor to introduce into evidence heroin obtained through an illegal search to undermine the credibility of the defendant's claim that he had never possessed narcotics. The Court explained that a defendant
>> "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." Id., at 65.
> . . . [I]n United States v. Havens, supra, the Court expanded the exception to permit prosecutors to introduce illegally obtained evidence in order to impeach a defendant's "answers to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination." Id., at 627.

5

III.   **CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained by Search and Seizure, [Docket No. 14], be **DENIED as moot**, as set forth above.

Dated: July 9, 2014                                                                                  s/Leo I. Brisbois
                                                                                                                  Leo I. Brisbois
                                                                                                                  U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 23, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection.  A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

James, 493 U.S. at 311-13. Consequently, in the present case, even if the disputed evidence was seized in violation of Defendant's Fourth Amendment rights, under the rule that the U.S. Supreme Court established in Walder and expanded in Havens, the Government still would be permitted to use that evidence for the limited purpose of impeaching Defendant's testimony at trial.